# UNITED STATES DISTRICT COURT

## DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 JUL 23 PM 12: 06

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| HENRY CARGO, Derivatively on Behalf of GREEN MOUNTAIN COFFEE ROASTERS, INC., | ) Case No. 2:12-cv-161 |
| | ) |
| Plaintiff, | ) **VERIFIED SHAREHOLDER** |
| | ) **DERIVATIVE COMPLAINT FOR** |
| v. | ) **BREACH OF FIDUCIARY DUTY,** |
| | ) **WASTE OF CORPORATE ASSETS,** |
| ROBERT P. STILLER, DAVID E. MORAN, JULES A. DEL VECCHIO, HINDA MILLER, LAWRENCE J. BLANFORD, FRANCES G. RATHKE, WILLIAM D. DAVIS, BARBARA D. CARLINI, MICHAEL J. MARDY, and DOUGLAS N. DAFT, | ) **UNJUST ENRICHMENT, AND** |
| | ) **CONTRIBUTION AND** |
| | ) **INDEMNIFICATION** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants, | ) |
| | ) |
| -and- | ) |
| | ) |
| GREEN MOUNTAIN COFFEE ROASTERS, INC., a Delaware corporation, | ) |
| | ) |
| | ) |
| Nominal Defendant. | ) |
| | ) **DEMAND FOR JURY TRIAL** |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Green Mountain Coffee Roasters, Inc. ("Green Mountain" or the "Company") on behalf of the Company against certain of its officers and directors.  This action seeks to remedy defendants' violations of law, including breaches of fiduciary duties, unjust enrichment, and waste of corporate assets that have caused substantial losses to the Company and other damages, such as to its reputation and goodwill, and further seeks contribution and indemnification in the event the Company is found liable in the related federal securities fraud class action arising from defendants' wrongful conduct.

2.      This action arises out of the recent acts of Green Mountain insiders which have wreaked havoc on the Company's stock price.  In February 2012, the Individual Defendants (as defined herein) issued improper statements affirming that the Company would meet its ambitious revenue and earnings guidance for fiscal year 2012.  The Individual Defendants knew or recklessly disregarded that it was unlikely the Company would meet these numbers, as demand for the Company's products had slowed and inventory was building.  They concealed these and other material facts from investors, however, in order to take advantage of the Company's artificially inflated stock price and sell *over $78 million* of their personally-held Green Mountain stock.  When the Individual Defendants were finally forced to admit that the Company had not met their projections for the second fiscal quarter of 2012 in early May 2012, the Company's stock price fell precipitously, nearly halving itself overnight.  As a result, two highly-leveraged

Company insiders were subjected to margin calls and forced to sell millions more of their personally-held shares, driving the Company's stock price down even further.

3.     The Individual Defendants knew that Green Mountain would not meet its fiscal 2012 revenue and earnings guidance at the time they reaffirmed it in February 2012. They knew that the Company's inventory was massively building and that demand for the Company's brewers and K-Cups® had slowed over the winter of 2011 and 2012. Further, they knew – and later acknowledged – that the Company's models for predicting consumer demand were flawed and ineffective.

4.     The Individual Defendants also learned that competition for Green Mountain would increase during 2012, as Starbucks Corporation ("Starbucks") planned its entry into the single-serve coffee brewing market. Starbucks disclosed that it had told Green Mountain about its entry into the single-serve coffee brewing market prior to its March 8, 2012 public unveiling of its single-cup home-brewing machine.

5.     While in possession of this material, non-public information concerning the likelihood that the Company would not meet its earnings and revenue projections, and while knowing of Starbucks' upcoming announcement that it planned to enter into the single-serve coffee brewing market, defendants Hinda Miller ("Miller"), William D. Davis ("Davis"), Robert P. Stiller ("Stiller"), Lawrence J. Blanford ("Blanford"), and Jules A. del Vecchio ("del Vecchio"), sold over $78 million of their personally-held Green Mountain stock.

6.     On May 2, 2012, after the market closed, the Individual Defendants announced that the Company's revenues and earnings for the second quarter of 2012 fell well below published guidance. As a result, the Individual Defendants were forced to lower their fiscal year 2012 guidance for revenues and earnings. On this news, the Company's stock price plummeted

from $49.52 the prior day to close at $25.87 on May 3, 2012, causing the Company to lose *47.76% of its market capitalization*. Since then, at least one investor has filed a federal securities fraud class action against the Company and defendants Stiller, Blanford, and Frances G. Rathke ("Rathke"), which has exposed the Company to significant liability.

7. Analysts and hedge fund managers have opined that the unexpected shortfall was the result of Green Mountain insiders' accounting manipulations and longstanding practice of inflating sales at the Company. Indeed, the Company's revenue recognition practices have been under investigation by the U.S. Securities and Exchange Commission ("SEC") for over two years.

8. As a result of the massive plunge in the Company's stock price, the Company's Chief Executive Officer ("CEO"), defendant Stiller, and former Lead Director defendant Davis, were forced into emergency stock sales resulting from margin calls. Defendants Stiller and Davis sold over 5.5 million shares of their personally-held Green Mountain stock on May 4 and 7, 2012, to meet margin calls. These massive sales caused the Company's stock price to fall further to $24.30, putting the Company's total market capitalization loss at *50.93%*.

9. Defendants Stiller's and Davis' sales were also improper because they occurred during a blackout period in which Company insiders were prohibited from selling their personally-held Company stock. As a result, the Board of Directors (the "Board") removed defendant Stiller from his position as Chairman of the Board and removed defendant Davis from his position as Lead Director, although both remain on the Company's Board.

10. Plaintiff now brings this litigation on behalf of the Company and seeks to rectify the conduct of the individuals bearing ultimate responsibility for the corporation's misconduct,

- 3 -

the directors on the Board and senior management, and recover for Green Mountain the harm their breaches of fiduciary duty caused.

11.     Plaintiff also seeks to recoup losses that the Company will sustain if it is found liable in a pending related federal securities fraud class action arising out of the Individual Defendants' improper statements.  At least one purchaser of Green Mountain stock has filed a class action suit captioned *Fifield v. Green Mountain Coffee Roasters, Inc., et al.*, No. 2:12-cv-91 (D. Vt.), filed May 7, 2012 (the "Securities Class Action").  The Securities Class Action alleges that Green Mountain and defendants Stiller, Blanford, and Rathke defrauded a class of stock purchasers by making false and misleading statements concerning the Company's revenue and earnings estimates for fiscal year 2012.  The Securities Class Action asserts violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5 thereunder, and section 20(a).

## JURISDICTION AND VENUE

12.     This Court has jurisdiction in this case under Article III of the United States Constitution and 28 U.S.C. §1331 because the underlying wrongdoing results from violations of the federal securities laws.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the

- 4 -

exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) Green Mountain maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Green Mountain, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

15.     Plaintiff, Henry Cargo, was a shareholder of Green Mountain at the time of the wrongs complained of, has continuously been a shareholder since that time and is a current shareholder.

**Nominal Defendant**

16.     Nominal defendant Green Mountain is a Delaware corporation with its principal executive offices located at 33 Coffee Lane, Waterbury, Vermont. Green Mountain is a leader in the specialty coffee and coffee maker business. The Company has dominated the single-serve coffee brewing market since 2006, when it acquired Keurig Incorporated, a company that had developed a single-cup brewing machine. The Company holds patents on K-Cups, which are the single-serving portion packs that hold the coffee grounds or other brew material, and primarily derives its profits from the sale of K-Cups.

- 5 -

**Individual Defendants**

17.   Defendant Stiller is a Green Mountain director and has been since 1993. Stiller was also Green Mountain's Chairman of the Board from May 2007 to May 2012 and President and CEO from July 1981 to May 2007. Stiller founded Green Mountain in July 1981. Stiller knowingly or recklessly: (i) made, reviewed, and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting. Stiller is named as a defendant in the Securities Class Action. While in possession of material, non-public information concerning Green Mountain's true business health, Stiller sold one million shares of his Green Mountain stock for $66,311,950 in proceeds. He sold an additional five million shares for proceeds of $123.4 million at a time when it was prohibited by the Company's internal trading policy. Stiller is named as a defendant in the Securities Class Action. Green Mountain paid Stiller the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $101,000 | $74,296 | 845,829 | $175,296 |

18.   Defendant Blanford is Green Mountain's CEO, President, and a director and has been since May 2007. Blanford either knowingly, recklessly, or with gross negligence: (i) made, reviewed, and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting. Blanford is named as a defendant in the Securities Class Action. While in possession of material, non-public information concerning Green Mountain's true business health, Blanford sold 54,002 shares of

his Green Mountain stock for $3,587,115.25 in proceeds.  Green Mountain paid Blanford the following compensation as an executive:

| Fiscal Year | Salary | Non-Equity Incentive Plan Compensation | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2011 | $767,692 | $932,000 | 1,889,708 | $5,996 | $3,595,396 |

19.     Defendant Rathke is Green Mountain's Vice President, Chief Financial Officer ("CFO"), Secretary, and Treasurer and has been since October 2003.  Rathke was also Green Mountain's interim CFO from April 2003 to October 2003.  Rathke either knowingly, recklessly, or with gross negligence: (i) made, reviewed, and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting.  Rathke is named as a defendant in the Securities Class Action. Green Mountain paid Rathke the following compensation as an executive:

| Fiscal Year | Salary | Non-Equity Incentive Plan Compensation | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2011 | $375,192 | $272,610 | $500,692 | $6,736 | $1,155,230 |

20.     Defendant Davis is a Green Mountain director and has been since 1993.  Davis was also Green Mountain's Lead Director from at least January 2009 to May 2012.  Davis was a member of Green Mountain's Audit and Finance Committee from at least January 2006 to May 2012.   Davis knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting.  Davis failed to fulfill his duties as an Audit Committee member, including by failing to ensure that the Company's press releases contained accurate financial information and that the Company maintained adequate controls over its financial reporting.

While in possession of material, non-public information concerning Green Mountain's true business health, Davis sold 60,000 shares of his Green Mountain stock for $4,052,223 in proceeds. He sold an additional 548,000 shares for proceeds of $13.85 million at a time when it was prohibited by the Company's internal trading policy. Green Mountain paid Davis the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|---|
| 2011 | $52,750 | $37,250 | $74,296 | 73,551 | $164,296 |

21.     Defendant del Vecchio is a Green Mountain director and has been since 1993. del Vecchio is also a member of Green Mountain's Audit and Finance Committee and has been since at least January 2009. del Vecchio knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting. del Vecchio failed to fulfill his duties as an Audit Committee member, including by failing to ensure that the Company's press releases contained accurate financial information and that the Company maintained adequate controls over its financial reporting. While in possession of material, non-public information concerning Green Mountain's true business health, del Vecchio sold 20,000 shares of his Green Mountain stock for $1,338,560 in proceeds. Green Mountain paid del Vecchio the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $66,000 | $74,296 | 182,150 | $140,296 |

22.     Defendant Michael J. Mardy ("Mardy") is Green Mountain's Interim Chairman of the Board and has been since May 2012 and a director and has been since April 2007. Mardy is

also Chairman of Green Mountain's Audit and Finance Committee and has been since April 2007. Mardy knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting. Mardy failed to fulfill his duties as an Audit Committee member, including by failing to ensure that the Company's press releases contained accurate financial information and that the Company maintained adequate controls over its financial reporting. Green Mountain paid Mardy the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $81,000 | $74,296 | 60,900 | $155,296 |

23.     Defendant Barbara D. Carlini ("Carlini") is a Green Mountain director and has been since 2002. Carlini is also a member of Green Mountain's Audit and Finance Committee and has been since at least January 2006. Carlini knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting. Carlini failed to fulfill her duties as an Audit Committee member, including by failing to ensure that the Company's press releases contained accurate financial information and that the Company maintained adequate controls over its financial reporting. Green Mountain paid Carlini the following compensation as a director:

| Fiscal Year | Stock Awards | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $63,000 | $74,296 | 222,006 | $137,296 |

24.     Defendant Miller is a Green Mountain director and has been since 1999.  Miller knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting.     While in possession of material, non-public information concerning Green Mountain's true business health, Miller sold 51,500 shares of her Green Mountain stock for $3,508,079.50 in proceeds.   Green Mountain paid Miller the following compensation as a director:

| Fiscal Year | Stock Awards | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $59,000 | $74,296 | 156,155 | $133,296 |

25.     Defendant David E. Moran ("Moran") is a Green Mountain director and has been since 1995.  Moran knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over demand forecasting, inventory management, and accounting.  Green Mountain paid Moran the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $53,000 | $74,296 | 172,150 | $127,296 |

26.     Defendant Douglas N. Daft ("Daft") is a Green Mountain director and has been since December 2009.  During times relevant, Daft knowingly or recklessly: (i) reviewed and approved improper statements reaffirming fiscal year 2012 revenue and earnings guidance that the Company could not meet; and (ii) reviewed and approved ineffective internal controls over

demand forecasting, inventory management, and accounting. Green Mountain paid Daft the following compensation as a director:

| Fiscal Year | Stock Awards | Option Awards | Aggregate Awards Outstanding | Total |
|---|---|---|---|---|
| 2011 | $54,500 | $74,296 | 9,434 | $128,796 |

27. The defendants identified in ¶¶20-23 are referred to as the "Audit Committee Defendants." The defendants identified in ¶¶17-18, 20-26 a re referred to as the "Director Defendants." Collectively, the defendants identified in ¶¶17-26 are referred to as the "Individual Defendants."

## DUTIES OF GREEN MOUNTAIN'S DIRECTORS AND OFFICERS

**Fiduciary Duties**

28. By reason of their positions as officers, directors, and/or fiduciaries of Green Mountain and because of their ability to control the business and corporate affairs of Green Mountain, the Individual Defendants owed and owe Green Mountain and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Green Mountain in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Green Mountain and its shareholders so to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

29. Each director and officer of the Company owes to Green Mountain and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information

with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

**The Audit Committee's Duties**

30.     The Audit Committee's Charter states that its purpose is to "oversee the accounting and financial reporting processes of the Company and the audits of the financial statements." Further, in order to carry out its stated purpose, the Audit Committee is responsible for the Company's "systems of internal controls regarding finance, accounting, legal compliance and ethics." Additionally, the Audit Committee review "significant financial reporting issues and judgments including an analysis of the effect of alternative Generally Accepted Accounting Principles ("GAAP") methods on the Company's financial statements."

**Control, Access, and Authority**

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Green Mountain, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

32.     Because of their advisory, executive, managerial, and directorial positions with Green Mountain, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and growth prospects of Green Mountain. While in possession of this material, non-public information, the Individual Defendants made improper representations regarding the Company, including information regarding Green Mountain's financial results.

- 12 -

33.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Green Mountain, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

34.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)    properly and accurately guide investors and analysts to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)    exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(c)    exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

(d)    remain informed how Green Mountain conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws.

**Breaches of Duties**

35.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duty of loyalty, good faith, and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Green Mountain, the absence of good faith on their part, and a knowing or willful disregard for their duties to the Company and its shareholders that the Individual Defendants were aware posed a risk of serious injury to the Company.

36.     The Individual Defendants breached their duty of loyalty by allowing Individual Defendants to cause, or by themselves causing, the Company to engage in accounting manipulations which misrepresented its financial condition and results.   The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.   Because of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject to investigations by the SEC, and is a defendant in the Securities Class Action.  Thus, Green Mountain has expended, and continues to expend, significant sums of money.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

37.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

38.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was engaging in a scheme to manipulate its financial statements, which allowed certain defendants to sell their Company stock at artificially inflated levels; (ii) enhance the Individual Defendants' executive and directorial positions at Green Mountain and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions; and (iii) deceive the investing public, including shareholders of Green Mountain, regarding the Individual Defendants' management of Green Mountain's operations, the Company's financial health and stability, and its future business prospects that had been misrepresented by Individual Defendants.   In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

39.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial statements.

40.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, illicit insider trading, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

41.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the

Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

42.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

43.     On February 1, 2012, the Individual Defendants issued a press release announcing Green Mountain's financial results for the first quarter of fiscal 2012.  In the press release, the Individual Defendants reaffirmed the Company's previously-issued revenue and earnings guidance for fiscal year 2012, which was initially issued in a Company press release filed July 27, 2011, and provided initial estimates for the second quarter of fiscal 2012.  Specifically, the press release stated:

> Our brewer sales in the first quarter of fiscal year 2012 were above our expectations, with approximately 4.2 million brewers sold by the combination of GMCR and our licensed partners.  That total is more than half of the 6.5 million brewers sold in all of our fiscal year 2011.... As these brewers come into use, we expect them to have a positive impact on future portion pack demand.  Given the challenge of estimating sales in such a dynamic environment, in the coming months we will be working to ensure we apply appropriate rigor and analyses to confirm and refine our modeling assumptions and estimates of forward demand.  In the meantime however, we are reaffirming our prior revenue and earnings estimates for fiscal year 2012. The Company reaffirmed its prior estimates for its fiscal year 2012, including:
>
> •     Total consolidated net sales growth of 60% to 65% from fiscal year 2011.
>
> •     Fiscal year 2012 non-GAAP earnings per diluted share in a range of $2.55 to $2.65 per diluted share, excluding any acquisition-related transaction expenses; legal and accounting expenses related to the SEC inquiry and

the Company's pending litigation; amortization of identifiable intangibles related to the Company's acquisitions; and any gain from the sale of the Filterfresh business.

- Capital expenditures in the range of $630.0 million to $700.0 million for fiscal year 2012.

\* \* \*

The Company is providing initial estimates for the second quarter of fiscal year 2012:

- Net sales growth of 45% to 50%.

- Fully diluted non-GAAP earnings per share in the range of $0.60 to $0.65 per share excluding any acquisition-related transaction expenses; legal and accounting expenses related to the SEC inquiry and the Company's pending litigation; and amortization of identifiable intangibles related to the Company's acquisitions.

44.    After this announcement, analysts noted that consumer demand for Green Mountain's products must have been high during the 2011 holiday season.  For example, Canaccord Genuity, Inc. analysts Scott Van Winkle and Chris Mandeville titled their February 2, 2012 note on Green Mountain "'Twas Simply a Holiday Brewer Bonanza; Reiterate Buy and Maintain $94 Target."  The note further stated: "Just as we began to see in the 2010 holiday, K-cups are clearly a gift item and K-cups were strong in this past holiday selling season as well." Dougherty & Company LLC analysts Gregory J. McKinley and Peter Mahon similarly noted that "Demand for the Keurig Brewer system and K-Cups was exceptionally strong in the December quarter."

45.    SunTrust Robinson Humphrey, Inc.'s ("SunTrust") February 1, 2012 report also indicated that Green Mountain's "inventories appear[ed] to be in check."  Specifically, the report stated:

More importantly, inventories appear to be in check (finished goods inventory -40% vs. 4Q). Management indicated that post-holiday retail levels are in the best position in several years. Recall, GMCR was caught short on inventory the past

two years due to stronger than expected demand and, accordingly, built inventory ahead of the 2011 season, leading some to believe that demand had slowed.

46. Two weeks after the Company reaffirmed the fiscal 2012 guidance, on February 15, 2012, defendant Stiller sold 500,000 shares of his personally-held Green Mountain stock for proceeds totaling $32,969,650.

47. On February 21, 2012, defendants Blanford and Rathke spoke at the Consumer Analyst Group of New York Conference. During that presentation, which took place less than four-and-a-half weeks before the end of the quarter, Rathke once again reaffirmed the Company's fiscal year 2012 non-GAAP earnings per share guidance in the range of $2.55 to $2.65 per share.

48. Just after these defendants once again reaffirmed the Company's fiscal 2012 guidance, defendant Davis sold 15,000 shares on February 23, 2012, for proceeds totaling $1,042,423.50. Defendant Stiller sold 500,000 shares the following day for proceeds of $33,342,300. This brought Stiller's total February sales proceeds to $66,311,950, his largest single-month sale since at least 2003. On February 27, 2012, defendants Davis and del Vecchio sold 35,000 and 20,000 shares of their personally-held Green Mountain stock, garnering proceeds of $2,322,827.50 and $1,338,560, respectively.

49. Defendants Miller, Davis, Stiller, del Vecchio, and Blanford made these and other improper insider sales, as described below, while in possession of material, non-public information concerning the Company's inability to meet the Individual Defendants' projected fiscal 2012 revenue and earnings guidance that they reaffirmed at the same time they were selling their personally-held stock. Specifically, the Individual Defendants knew or recklessly disregarded the following material, non-public facts which rendered their statements and reaffirmations of the 2012 earnings guidance improper:

(a)    demand for the Company's brewers and K-Cups had slowed over the

winter of 2011 and 2012;

(b)    the Company's models for predicting consumer demand were flawed and

ineffective;

(c)    the Company's inventory was massively building as inventory turnover

was decreasing; and

(d)    the Company lacked adequate internal controls over financial reporting.

## THE COMPANY MISSES ITS EARNINGS PROJECTIONS, CAUSING ITS STOCK PRICE TO TUMBLE

50.    On May 2, 2012, the Individual Defendants issued a press release announcing the

Company's second quarter 2012 earnings results and lowering the Company's fiscal 2012

guidance. Specifically, the press release stated:

**Second Quarter Fiscal Year 2012**

- Net sales of $885.1 million, up 37% over net sales of $647.7 million in the year-ago quarter

- GAAP EPS of $0.58 compared to second quarter fiscal year 2011 GAAP EPS of $0.44; non-GAAP EPS of $0.64 increases 33% over $0.48 in the year-ago quarter

- GAAP operating income of $149.6 million compared to second quarter fiscal year 2011 GAAP operating income of $119.6 million; non-GAAP operating income of $162.3 million improves 22% over the year-ago quarter

- GAAP net income of $93.0 million compared to second quarter fiscal year 2011 GAAP net income of $65.4 million; non-GAAP net income of $101.7 million increases 42% over the year-ago quarter

"Over the past several years we achieved a strong net sales growth rate driven by consumers' r apid acceptance of our innovative Keurig® Single Cup Brewing system," said Lawrence J. Blanford, GMCR's president and CEO. "Additionally, during this timeframe we made a number of strategic acquisitions that strengthened our long-term position and contributed to our growth rate. During

the second fiscal quarter our 37% net sales growth resulted from more consumers adopting the ease and convenience of Keurig's® Choose. Brew. Enjoy.™ approach to beverages. Despite lower than-anticipated portion pack sales, and to a lesser degree, brewer sales, in the quarter we were able to control sales, general and administrative expenses enabling us to achieve non-GAAP earnings per share growth of 33%."

\* \* \*

**Company Estimates for Fiscal Year 2012**

The Company provided revised estimates for its fiscal year 2012:

- Total net sales in the range of $3.8 billion to $4.0 billion, or net growth of 45% to 50%, from $2.7 billion in fiscal year 2011.

- Fiscal year 2012 non-GAAP earnings per diluted share in a range of $2.40 to $2.50 per diluted share, excluding any acquisition-related transaction expenses; legal and accounting expenses related to the SEC inquiry and the Company's pending litigation; amortization of identifiable intangibles related to the Company's acquisitions; and any gain from the sale of the Filterfresh business.

- Capital expenditures in the range of $525 million to $575 million.

51.     The May 2, 2012 press release also noted that the Company's inventory had almost doubled since the same quarter the previous year, stating: "Inventories were $602.1 million at March 24, 2012 compared to $300.8 million at March 26, 2011."

52.     During the earnings conference call held that same day to discuss the earnings results, the Individual Defendants attributed the lower than anticipated sales and increased inventory to the "unseasonably warm weather" that the country had experienced during the 2011-2012 winter. Specifically, defendant Blanford stated:

> While we sold 1.4 million brewers in the quarter, our brewer sales were lower than anticipated. Historically, quarterly brewer sales have proven to be very challenging to predict with accuracy. We believe at least part of the delta between actual brewer sales and our forecast resulted from the fact that as intended, we achieved a better in-stock inventory position coming into and through the important 2011 holiday season compared to prior years, and consequently did not see restocking demand as strong as we had in previous years. We also had lower than anticipated portion pack sales in the quarter. We

think that the unseasonably warm weather experienced in many parts of the US adversely affected sales of our seasonal beverages such as hot cocoa and hot apple cider. While our sales of seasonal varieties were up over last year, they were not up to the extent we anticipated. This not only impacted our sales for the quarter, but also resulted in a higher obsolete inventory.

We are currently examining other factors like consumption patterns, weather related trends, channel shifts, trade inventory levels as well as customer and partner order patterns to better understand each of those input's variability. Given our dynamic business, we continue to make refinements to our portion pack demand estimates as we work through additional analysis on the quarter and our go-forward expectations.

53.     Defendant Rathke discussed the Company's massive inventory buildup during the

same call, stating:

Turning to inventories, inventories were $602.1 million at March 24, 2012, compared to $300.8 million in the year-ago period. Included in inventory is a $159.7 million or 188% increase in raw materials, most notably from an increase in green coffee volume and a 24% average green coffee cost increase. In addition, we had a $141.6 million or 66% increase in finished goods inventory with approximately 54% of the increase due to Keurig brewers on-hand. You'll also recall that this time last year, we were having trouble meeting orders for both brewers and portion packs. The year-over-year inventory increase reflects our deliberate decision to carry more weeks of portion pack inventory on-hand so as to better respond to our customers' ordering patterns and demand. Specifically, we deliberately increased our portion pack inventory coverage from four weeks to between five and six weeks. Consequently, at the end of our second quarter, portion pack forward inventory of approximately six weeks is in line with our expectations.

54.     Defendant Blanford further emphasized that defendants were unsure as to the

reasons for the earnings miss, stating:

...I think related to the demand, we certainly as I mentioned and Fran mentioned, we certainly were able to understand the portion of the demand, our miss against our estimates for Q2 related to brewers and seasonal products, which we learned a lot on seasonals this particular quarter that we won't forget as temperatures across the country were very, very unseasonably warm and we learned a lot about the fact that hot cocoa is very much temperature sensitive. So a big learning for us and we'll manage that better going forward. The rest of the miss as Fran indicated, we're still trying to really understand. And we have a number of efforts under way to better really understand the overall portion pack demand. And those include consumption patterns of consumers, weather related, did weather in fact cause even some issues with our cough my coffee sales in the quarter. Channel

shifts that are going on, trade inventory levels, customer and partner order patterns. These are all things and I would say also we've taken two 10% price increases over the last year. And we're trying to understand the sensitivity of consumption to pricing as well. So these are all factors. We don't honestly know to what degree each of those contributed to our miss in Q2, or to what extent they will manifest themselves as we go forward in Q3 and Q4. We basically determined our sales forecast by rolling up our estimates from our sales organization, bottom's up for the next quarter out, and I think the numbers that we have projected for Q3 are from that process and I think all of us are trying to take into account kind of these underlying factors and we're still trying to understand them.

55.     On this news, Green Mountain stock plunged by *48%*, down from $49.52 the previous day to close at $25.87 on May 3, 2012.

56.     Analysts were especially disturbed by the Individual Defendants' inability to accurate forecast consumer demand for the Company's products. For example, SunTrust analyst William B. Chappell, Jr. commented, "[w]e have diminished faith in [Green Mountain's] forecasting abilities following misses in two of the last four quarters." Similarly, KeyBanc Capital Markets analyst Akshay S. Jagdale stated in a May 3, 2012 note, that "[a]s a result of the … disappointing results, management's credibility is yet again under question." Canaccord Genuity, Inc. analysts likewise noted in a May 3, 2012 note, that the "inability to forecast is the concern that exacerbates the lower outlook" and cut the Company's target. William Blair & Company, L.L.C. analyst Jon Andersen noted that "the large sales variances, both negative and positive, experienced over the past several quarters call into question the company's ability to forecast the business and beg the question why."

57.     Analysts also criticized the Company's inventory issues. Dougherty & Company LLC analysts Gregory J. McKinley and Peter Mahon stated that "[h]igh inventory levels and robust (albeit moderated) capital expenditures continue to weigh on earnings quality and remain a risk focus for investors. These balance sheet items tend not to matter until they matter and softer than expected portion pack volumes mean that time is now."

58.     According to a May 3, 2012 *New York Times* article entitled "Green Mountain Shares Fall After Company Cuts Outlook," short-sellers said the Company's second quarter financial results "added weight to the contentions of the hedge fund manager David Einhorn and others that the company had been inflating sales and that its high-growth days were over."

59.     As a result of the massive plunge in the Company's stock price, defendants Stiller and Davis were forced into emergency stock sales resulting from margin calls. Specifically, defendant Davis sold approximately 400,000 shares on May 4, 2012, and approximately 148,000 shares on May 7, 2012. Defendant Stiller sold approximately five million shares on May 7, 2012, which netted *$123.4 million in proceeds*. The massive influx of this stock into the market caused the Company's stock price to fall another 3%.

60.     In addition to the havoc they wreaked on Green Mountain's stock price, defendants Stiller's and Davis' sales were improper because they appear to have occurred during a blackout period in which Company insiders were prohibited from selling their personally-held Company stock. In a press release filed May 8, 2012, the Individual Defendants disclosed that these sales "were inconsistent with the Company's internal trading policies." Additionally, during the Company's review of Davis' May 4, 2012 trade, the Company discovered that "inconsistent with the Company's policy, Mr. Davis had pledged approximately 204,000 new shares to his margin loan after January 1, 2012." These additional pledged shares were improper because the Company amended its internal policy in December 2011 to prohibit new pledges after January 1, 2012. As a result of this wrongdoing, the Board removed Stiller from his position as Chairman of the Board and removed Davis from his position as Lead Director, although both remain on the Company's Board. In the Company's May 8, 2012 press release, the

- 23 -

Board stated that its Governing and Nominating Committee "will be reviewing appropriate Board and committee structure and composition."

## DAMAGES TO GREEN MOUNTAIN CAUSED BY THE INDIVIDUAL DEFENDANTS

61.    As a result of the Individual Defendants' wrongful conduct, Green Mountain disseminated improper statements reaffirming the Company's fiscal 2012 revenue and earnings guidance, which had the effect of misrepresenting the Company's true financial health.  Green Mountain is now a defendant in the Securities Class Action.  The Company will face substantial costs in connection with the Securities Class Action.  The Individual Defendants' improper statements and improper stock sales have also devastated Green Mountain's market capitalization as reflected by the $3.9 billion, or over 50%, market capitalization loss.

62.    Further, as a direct and proximate result of the Individual Defendants' conduct, Green Mountain has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    costs incurred in connection with investigating and remediating the Company's demand forecasting abilities;

(b)    costs incurred in investigating and defending Green Mountain and certain officers in the Securities Class Action, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment; and

(c)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to Green Mountain.

63.    Moreover, these actions have irreparably damaged Green Mountain's corporate image and goodwill.  For at least the foreseeable future, Green Mountain will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been

- 24 -

implicated in illegal behavior and have misled the investing public, such that Green Mountain's

ability to raise equity capital or debt on favorable terms in the future is now impaired.

### INSIDER SALES BY DEFENDANTS BLANFORD, DAVIS, DEL VECCHIO, MILLER, AND STILLER

64.     As officers and directors of Green Mountain, defendants Blanford, Davis, del

Vecchio, Miller, and Stiller were privy to material, non-public information about the Company's

financial accounting.  These defendants were also responsible for ensuring that the Company's

earnings and revenue projections accurately reflected consumer demand.  Defendants Blanford,

Davis, del Vecchio, Miller, and Stiller engaged in insider trading activity at a time when they

knew adverse material, non-public information about the Company's true financial health was

not being disclosed to the shareholders, including prior to the announcement that Starbucks was

entering into the single-serve coffee brewing market, thereby increasing competition for Green

Mountain.

65.     Specifically, defendants Blanford, Davis, del Vecchio, Miller, and Stiller sold

over $78 million of their personally-held Green Mountain stock at artificially inflated prices in a

*one month period* as detailed by the chart below:

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| BLANFORD | 2/28/2012 | 54,002 | $66.43 | $3,587,115.25 |
| **Total:** | | **54,002** | | **$3,587,115.25** |
| | | | | |
| DAVIS | 2/7/2012 | 10,000 | $68.70 | $686,972.00 |
| | 2/23/2012 | 15,000 | $69.49 | $1,042,423.50 |
| | 2/27/2012 | 35,000 | $66.37 | $2,322,827.50 |
| **Total:** | | **60,000** | | **$4,052,223.00** |
| | | | | |
| DEL VECCHIO | 2/27/2012 | 20,000 | $66.93 | $1,338,560.00 |
| **Total:** | | **20,000** | | **$1,338,560.00** |

| | | | | |
|---|---|---|---|---|
| MILLER | 2/3/2012 | 25,000 | $66.06 | $1,651,410.00 |
| | 2/17/2012 | 26,500 | $70.06 | $1,856,669.50 |
| **Total:** | | **51,500** | | **$3,508,079.50** |
| | | | | |
| STILLER | 2/15/2012 | 500,000 | $65.94 | $32,969,650.00 |
| | 2/24/2012 | 500,000 | $66.68 | $33,342,300.00 |
| **Total:** | | **1,000,000** | | **$66,311,950.00** |
| | | | | |
| **TOTAL:** | | **1,185,502** | | **$78,797,927.75** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

66.     Plaintiff brings this action derivatively in the right and for the benefit of Green Mountain to redress injuries suffered, and to be suffered, by Green Mountain as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Green Mountain is named as a nominal defendant solely in a derivative capacity.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

67.     Plaintiff will adequately and fairly represent the interests of Green Mountain in enforcing and prosecuting its rights.

68.     Plaintiff is a shareholder of the Company.  Plaintiff was a shareholder of the Company at the time of the wrongs complained of, has continuously been a shareholder since that time, and is a current shareholder.

69.     The current Board of Green Mountain consists of the following nine individuals: defendants Stiller, Blanford, Carlini, Daft, Davis, del Vecchio, Mardy, Miller, and Moran.

70.     Plaintiff has not made a pre-suit demand on the Green Mountain's Board to bring these derivative claims because such demand would be a futile and useless act, and therefore, is legally excused.

- 26 -

**Demand Is Futile as to Defendants Blanford, Davis, del Vecchio, Miller, and Stiller Because They Face a Substantial Likelihood of Liability in Connection with Their Improper Stock Sales**

71.     Defendants Blanford, Davis, del Vecchio, Miller, and Stiller sold Green Mountain stock under highly suspicious circumstances. Blanford, Davis, del Vecchio, Miller, and Stiller as officers and/or directors of Green Mountain, possessed material, non-public company information and used that information to benefit themselves. Blanford, Davis, del Vecchio, Miller, and Stiller sold stock based on this knowledge of material, non-public Company information regarding decreased demand for the Company's brewers and K-Cups, the Company's flawed and ineffective models for predicting consumer demand were flawed and ineffective, the Company's massive inventory buildup, and the Company's inadequate controls over financial reporting. Due to their possession of this knowledge, they knew or recklessly disregarded that the Company would not meet its earnings and revenue projections for fiscal year 2012 and that their statements reaffirming their earnings guidance were improper. Accordingly, Blanford, Davis, del Vecchio, Miller, and Stiller each face a substantial likelihood of liability for breach of their fiduciary duty of loyalty. Any demand upon Blanford, Davis, del Vecchio, Miller, and Stiller is futile.

72.     Additionally, defendants Stiller and Davis face a substantial likelihood of liability for their improper stock sales pursuant to the margin calls. The Company has admitted that Stiller's May 7, 2012 sale of stock, and Davis' May 4 and 7, 2012 sale of stock, were "inconsistent with Company policy." Davis further faces a substantial likelihood of liability for pledging additional shares to his margin loan after January 1, 2012, which was also inconsistent with the Company's policy. Accordingly, Stiller and Davis each face a substantial likelihood of liability for breach of their fiduciary duty of loyalty. Any demand upon Stiller and Davis is futile.

- 27 -

**Demand Is Futile as to Audit Committee Defendants del Vecchio, Miller, Davis, Carlini, and Mardy Because They Face a Substantial Likelihood of Liability for Approving Improper Statements Reaffirming the Company's Fiscal Year 2012 Earnings Guidance**

73.     Defendants del Vecchio, Miller, Davis, Carlini, and Mardy, as members of the Audit Committee, were responsible under the Audit Committee Charter for reviewing and approving quarterly and annual financial statements, earnings press releases, and Green Mountain's internal controls over financial reporting. Despite these duties, the Audit Committee Defendants knowingly or recklessly reviewed and approved the Company's February 1, 2012 press release, which improperly reaffirmed the Company's earnings and revenue guidance for fiscal year 2012. The Audit Committee Defendants knew or recklessly disregarded that the Company would not meet these estimates. The Audit Committee Defendants also reviewed and approved Green Mountain's financial reporting internal controls, which were ineffective, especially with regard to projecting consumer demand for the Company's products. Accordingly, these defendants face a sufficiently substantial likelihood of liability for breach of their fiduciary duties of loyalty and good faith. Any demand upon these defendants is futile.

**Demand Is Futile as to Defendant Blanford Because He Lacks Independence**

74.     Defendant Blanford's principal professional occupation is his employment as Green Mountain's CEO, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, Green Mountain paid Blanford the following compensation:

| Fiscal Year | Salary | Non-Equity Incentive Plan Compensation | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2011 | $767,692 | $932,000 | 1,889,708 | $5,996 | $3,595,396 |

Accordingly, Blanford is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal

occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to Blanford.

**Demand Is Futile as to the Entire Board**

75.     The entire Board faces a substantial likelihood of liability failing to ensure that an adequate system of internal controls was in place, including adequate controls over the Company's demand forecasting.

76.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by Green Mountain's officers and directors and these acts are incapable of ratification.

77.     Each of the defendant directors of Green Mountain authorized and/or permitted the improper statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the improper statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

78.     Any suit by the current directors of Green Mountain to remedy these wrongs would expose the Company to further violations of the securities laws. The Company, as well as defendants Stiller, Blanford, and Rathke, who are defendants in the Securities Class Action which alleges false and misleading statements similar to those above. If the directors pressed forward with their right of action against defendants Stiller, Blanford, and Rathke in this action, then the Company's efforts would compromise the defense of the Securities Class Action. Thus, the Board is hopelessly conflicted in making any supposedly independent determination related the subject matter of this complaint.

79.     Green Mountain has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Green Mountain any part of the damages Green Mountain suffered and will suffer thereby.

80.     If Green Mountain's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by directors and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of Green Mountain.  However, the directors and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Green Mountain against these defendants, known as the "insured versus insured exclusion."   As a result, if these directors were to cause Green Mountain to sue themselves or certain of the officers of Green Mountain, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors and officers' liability insurance, then the current directors will not cause Green Mountain to sue the defendants named herein, since they will face a large uninsured liability and lose the ability to recover for the Company from the insurance.

81.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Green Mountain for any of the wrongdoing alleged by plaintiff herein.

82.     Plaintiff has not made any demand on the shareholders of Green Mountain to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Green Mountain is a publicly held company with over 155 million shares outstanding and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

**COUNT I**

**For Breach of Fiduciary Duty Against the Individual Defendants**

83.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.     As alleged in detail herein, the Individual Defendants, by reason of their positions as officers and directors of Green Mountain and because of their ability to control the business and corporate affairs of Green Mountain, owed Green Mountain fiduciary obligations of due care and loyalty, and were and are required to use their utmost ability to control and manage Green Mountain in a fair, just, honest, and equitable manner.

85.     Defendants Blanford and Rathke violated  their duties of care and loyalty by making improper public statements reaffirming the Company's earnings and revenue guidance for fiscal year 2012.

86.     Defendants Blanford, Davis, del Vecchio, Miller, and Stiller violated their

- 31 -

fiduciary duties of loyalty by making improper insider sales while in possession of material, non-public information concerning the Company's inability to meet its fiscal year 2012 earnings guidance.

87. Defendants Stiller and Davis breached their fiduciary duties of loyalty by violating the Company's internal trading policies in connection with their May 4 and May 7, 2012 sales of stock pursuant to the margin calls.

88. The Audit Committee Defendants breached their fiduciary duties of loyalty by approving the improper revenue and earnings guidance as described herein. The Audit Committee Defendants also completely and utterly failed in their duties of oversight, including their duties of oversight of the financial and reporting process, and of reviewing earnings press releases and the steps management has taken to monitor and control this, as required by the Audit Committee Charter in effect at the time.

89. All of the Director Defendants failed in their duties of oversight over the Company's financial and reporting process and breached their fiduciary duty of loyalty by failing to ensure that an adequate system of internal controls over demand forecasting, inventory management, and accounting was in place.

90. But for the abdication of the Individual Defendants' fiduciary duties, the Company would not have been damaged. Accordingly, all of the Individual Defendants breached their fiduciary duties.

91. As a direct and proximate result of Individual Defendants' failure to perform their fiduciary obligations, Green Mountain has sustained significant damages, as alleged herein. As a result of the misconduct allege herein, these defendants are liable to the Company.

92. Plaintiff, on behalf of Green Mountain, has no adequate remedy at law.

- 32 -

## COUNT II

### For Waste of Corporate Assets Against the Individual Defendants

93.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets: (i) by failing to ensure that an adequate system of internal controls over the Company's demand forecasting, inventory management, and accounting was in place;  (ii) by failing to properly consider the interests of the Company and its public shareholders; (iii) by failing to conduct proper supervision; (iv) by paying undeserved incentive compensation to certain of its executive officers; and (v) by incurring potentially hundreds of millions of dollars in liability from the Securities Class Action.

95.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

96.     Plaintiff, on behalf of Green Mountain, has no adequate remedy at law.

## COUNT III

### For Unjust Enrichment Against the Individual Defendants

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

98.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Green Mountain.

99.     Plaintiff, as a shareholder and representative of Green Mountain, seeks restitution from the Individual Defendants, each of them, and seeks an order of this Court disgorging all

profits, benefits, and other compensation obtained by the Individual Defendants, each of them, from their wrongful conduct and fiduciary breaches.

100.    Plaintiff, on behalf of Green Mountain, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Contribution and Indemnification

101.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.    Green Mountain is alleged to be liable to private persons, entities, and/or classes by virtue of the same facts or circumstances as are alleged herein to give rise to the Individual Defendants' liability to Green Mountain.

103.    Green Mountain's alleged liability on account of the wrongful acts and practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal, and/or bad faith acts or omissions of the Individual Defendants.

104.    Green Mountain is entitled to contribution and indemnification from each of the Individual Defendants in connection with all such claims that have been, are, or may in the future be asserted against Green Mountain by virtue of the Individual Defendants' wrongdoing.

105.    Plaintiff, on behalf of Green Mountain, has no adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiff therefore requests, on behalf of Green Mountain, judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.      Directing Green Mountain to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Green Mountain and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following corporate governance policies:

1.      a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to control insider selling;

3.      a proposal to strengthen Green Mountain's oversight of its disclosure procedures;

4.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

5.      a provision to permit the shareholders of Green Mountain to nominate candidates for election to the Board.

C.      Awarding to Green Mountain restitution from the Individual Defendants, each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

D.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 10, 2012

O'CONNOR & KIRBY, P.C.

By: _____
David V. Kirby
174 Battery Street, 3rd Floor
Burlington, Vermont 05401
Telephone: (802) 863-0112
Facsimile:   (802) 865-5980
Email: david@kirbyoconnor.com


POWERS TAYLOR LLP

Patrick W. Powers
Zachary Groover
8150 N. Central Expressway
Suite 1575
Dallas, Texas 75206
Telephone:   (214) 239-8900
Facsimile:   (214) 239-8901
Email:  patrick@powerstaylor.com
Email:  zach@powerstaylor.com


THE BRISCOE LAW FIRM, PLLC

Willie C. Brisoe
8117 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:   (214) 706-9314
Facsimile:   (214) 706-9315
Email:  wbriscoe@thebriscoelawfirm.com

LAW OFFICES OF THOMAS G. AMON

Thomas G. Amon
250 West 57th Street, Suite 1316
New York, New York 10107
Telephone:  (212) 810-2430
Facsimile:  (212) 810-2427
Email:  tgamon@amonlaw.com

*Attorneys for Plaintiff*

<u>VERIFICATION</u>

I, _____Henry Cargo_____, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, Unjust Enrichment, and Contribution and Indemnification. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: ___15 JUNE 2012_____

_____
HENRY CARGO